**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KENNETH THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 17 C 6386** |
| | ) | |
| **SGT. MCCOY, et al.,** | ) | **Judge Rebecca R. Pallmeyer** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Thomas, formerly a detainee at the Cook County Jail, brings this *pro se*

complaint pursuant to 42 U.S.C. § 1983, alleging that while confined at the jail, he had to spend

ten days in a cell without a working toilet. Defendants have moved for summary judgment, arguing

that a non-functioning toilet did not amount to an objectively serious deprivation, that Defendants

themselves are not liable for the deprivation, and that Plaintiff did not suffer any physical injury as

a result of the condition. For the reasons stated here, the motion is denied.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

Under Local Rule 56.1, a party moving for summary judgment is required to submit "a

statement of material facts as to which the moving party contends there is no genuine issue and

that entitle the moving party to judgment as a matter of law." *Petty v. City of Chicago*, 754 F.3d

416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific

references to the affidavits, parts of the record, and other supporting materials relied upon to

support the facts set forth in that paragraph." L.R. 56.1(a). The opposing party must file a

response to each numbered paragraph in the moving party's statement, "including, in the case of

any disagreement, specific references to the affidavits, parts of the record, and other supporting

materials relied upon." L.R. 56.1(b)(3)(B). Unless appropriately rebutted, any material facts in the

moving party's statement is deemed admitted. L.R. 56.1(b)(3)(C). The party opposing summary

judgment also may present a separate statement of additional facts, also supported with record citations.

Defendants filed their summary judgment motion and supporting materials [75] on September 5, 2018, and furnished Plaintiff with the Notice to Pro Se Litigant Opposing Motion for Summary Judgment that is required by Local Rule 56.2 [75-1].  The notice explained how Plaintiff was to respond to Defendants' motion and cautioned Plaintiff that the court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1.  *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Although the court gave him additional time to do so, Plaintiff has not responded to Defendants' Rule 56.1 Statement in the manner set forth in the rule.  Plaintiff did submit a brief declaration stating that the facts in his summary judgment response are true [86].  He also submitted a memorandum in which he challenges certain of Defendants' factual statements and arguments [87].  Although he is *pro se*, Plaintiff is obligated to comply with Local Rule 56.1.  *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").  The facts set forth in Defendants Local Rule 56.1(a)(3) Statement are therefore deemed admitted to the extent they are supported by evidence in the record.  *See Keeton v. Morningstar, Inc.*, 667 F.3d 880, 884 (7th Cir. 2012).  The court will also, however, consider factual assertions Plaintiff has made in his response to Defendants' summary judgment motion, to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted.  *See Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014) (Chang, J.) ("Although the Court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings.").  The court also takes account of Plaintiff's deposition testimony, including portions not mentioned in Defendants' Statement of Facts.  *See Bentz v. Hardy*, 638 F. App'x 535, 536 (7th Cir. 2016) (plaintiff's failure to respond properly to Defendants' Rule 56.1 Statement was not fatal where

defendants principally relied on his deposition testimony in support of their motion, and his account of the conditions he endured was undisputed).

## II.     Factual Background

This lawsuit arises from Plaintiff's contention that from May 4, 2017, to May 14, 2017, he was housed in a cell in Division 6, Tier 2P, of the Cook County Jail with a non-functioning toilet and sink. (Defs.' Stmt. [75-2] at ¶ 1.) The problem began on the night of May 4, when Plaintiff's cellmate flushed the toilet and it would not stop flushing. (Pl.'s Dep. [75-3] at 24:20-25:2.) Plaintiff and his cellmate reported the problem to an unnamed correctional officer—who is not one of the Defendants in this case—and the officer turned off the water to his cell. (*Id.* at 25:4-10.) The water in the cell, both to the sink and the toilet, remained off for ten days. (*Id.* at 25:22-26:3.)

A correctional officer told Plaintiff that the water would be fixed the next day, but Plaintiff does not recall the name of that officer. (*Id.* at 29:22-30:1.) Plaintiff testified that Sgt. McCoy was aware of the situation "the entire time." (*Id.* at 43:2-10.) According to Plaintiff, Sgt. McCoy assured him and his cellmate that she would let the correctional officers know that the cell did not have working plumbing, and the officers would let them out to use the bathroom. (*Id.* at 30:17-23; 43:7-10.) Sgt. McCoy did sometimes release Plaintiff and his cellmate out to use the bathroom. (*Id.* at 30:17-18.) During the day shift, when Sgt. McCoy was at work, Plaintiff did not have any problems being released from his cell to use the bathroom, with the exception of one incident described below involving Defendant Officer Pitts. (*Id.* at 49:12-50:6.)

During the time period in which Plaintiff's toilet was non-functioning, inmates were allowed time in the dayroom for three hours in the morning and three hours in the evening. (Defs.' Stmt. at ¶ 6.) At times, Plaintiff was allowed to use the dayroom bathroom after the 9 p.m. lockup. (*Id.* at ¶ 7.) Plaintiff testified that outside of the six hours per day of dayroom time, he was allowed to use the dayroom bathroom between seven and ten times. (*Id.* at ¶ 8.; *see* Pl.'s Dep. at 30:24-31:9.) Defendants, in their brief, characterize this testimony as indicating that Plaintiff was given access to a bathroom "up to ten times per day" in addition to his dayroom time. (*See* Brief in Supp. of Mot. for Summ. J. [75] at 8.) Plaintiff disputes this characterization; he asserts that he

3

was allowed out of his cell to use the bathroom only seven to ten times total during the ten-day period. (*See* Pl.'s Resp. [87] at 1.) Construing the record in the light most favorable to Plaintiff, the court assumes he was allowed to use the toilet outside of his cell seven to ten times in the ten-day period in which his toilet was broken, in addition to any times he was able to use the bathroom during his dayroom time.

On May 11, 2017, Plaintiff asked Defendant Officer Pitts for permission to use the dayroom bathroom at about 11 a.m. (*See* Pl.'s Dep. at 33:8-11.; 35:17-20.) Plaintiff had not used the dayroom bathroom that morning, as he was asleep in his cell during dayroom time (*id.* at 35:21-24) and had not used the bathroom since lockdown the previous night. (*Id.* at 39:39:5-11.) When Plaintiff asked Officer Pitts for permission to use the bathroom, she allegedly heard his request and shrugged her shoulders in response. (*Id.* at 36:3-23.) Ignoring Plaintiff, she left the deck "for maybe an hour or two." (*Id.* at 36:4-6.)

When Officer Pitts returned to the tier, Plaintiff told her that he had urinated on himself and asked for a uniform exchange and to speak to a sergeant. (*Id.* at 36:7-9.) Officer Pitts did not get a sergeant, but shortly before 3:00 p.m., she did give Plaintiff a new pair of pants. (*Id.* at 36:9-10; 40:17-23.) Plaintiff testified that he does not know whether Sgt. McCoy was working the day of this incident, but he did not tell her about it. (*Id.* at 50:7-15.)

Outside of the incident with Officer Pitts, there were times overnight that Plaintiff could not use the bathroom because the officer was not in the "bubble" (correctional officer's office) or the officer told him that he would have to wait. (Defs.' Stmt. at ¶¶ 2-3.) Plaintiff does not know the names of these officers. (Pl.'s Dep. at 45:16-24.) On those occasions, Plaintiff would use the non-functioning toilet. (Defs.' Stmt. at ¶ 4.) Plaintiff testified that correctional officers knew that the toilet in his cell was broken and that he and his cellmate were using the non-functioning toilet. (Pl.'s Dep. at 48:6-49:3.) At some point, Plaintiff testified, the toilet was so filled with garbage and waste that he and his cellmate had to wrap plastic around it. (Pl.'s Dep. at 26:16-23.)

As to Lt. Rush, Plaintiff testified that he became aware of the problem with Plaintiff's cell around May 8, when he went to Plaintiff's cell to discuss his grievance. (*Id.* at 43:15-18.) At some

point, maybe on May 12, Plaintiff understood that Lt. Rush intended to move Plaintiff and his cellmate, but later changed his mind. (*Id.* at 43:12-15.) Asked what Lt. Rush or Sgt. McCoy did about the problem, Plaintiff testified that he was not aware of them taking any action. (Defs.' Stmt. at ¶ 9.)

At 1:19 p.m. on May 12, 2017, a work order, initiated by a "Vernita Jones," was submitted for the plumbing in Plaintiff's cell. (*Id.* at ¶ 10; [75-4].) On May 14, 2017, Plaintiff was relocated to a different cell. (Defs.' Stmt. at ¶ 11.) Plaintiff did not suffer any physical injuries as result of the non-working plumbing. (*Id.* at ¶ 13.)

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (internal quotation and citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that

party." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 334 (7th Cir. 2011) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## ANALYSIS

Because Thomas is a pretrial detainee, his claims are assessed under the Fourteenth Amendment. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). A pretrial detainee's constitutional rights may be violated when jail officials act unreasonably to objectively serious living conditions that deprive the detainee of basic human needs. *See Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015) "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that 'amount to punishment.' " *Id.* (*quoting Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "A pretrial condition can amount to punishment in two ways: first, if it is 'imposed for the purpose of punishment,' or second, if the condition 'is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment.' " *Id.* (*quoting Bell*, 441 U.S. at 538–39). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendants "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendants' conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (*citing Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-74 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley*'s objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees). The court concludes that to prevail on this claim that the conditions of pretrial confinement violate the Constitution, a detainee must prove: (1) the conditions in question are or were objectively serious; (2) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions; and (3) the defendant's actions were objectively unreasonable—that is, "not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *Kingsley*, 135 S. Ct. at 2473–74

Defendants seek summary judgment in their favor. They contend that (1) the non-functioning toilet did not amount to an objectively serious deprivation; (2) Defendants did not

possess a sufficiently culpable state of mind; and (3) Plaintiff did not suffer any physical injury as a result of the complained-of conditions.

## I.      Objectively Serious Condition

"[A]dequate toilet facilities 'are among the minimal civilized measure of life's necessities that must be afforded prisoners.'" *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017) (Feinerman, J.) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012)), *see also Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *10 (N.D. Ill. June 5, 2013) (Kendall, J.) (collecting cases and observing that "unsanitary conditions of confinement arising from broken plumbing" may rise to the level of a constitutional violation).  That said, a short-term breakdown, where the inmate otherwise has access to drinking water and alternative bathroom facilities, does not violate the Constitution.  *See Akindele*, 2017 WL 467683, at *4.

In this case, while his response mentions generally that he was not able to get water at times during this period, Plaintiff has not presented evidence that he lacked drinking water due to the plumbing issue.  Instead, he focuses on the allegedly unsanitary condition of his cell for the ten days he was confined with a broken toilet, as well as the fact that there were occasions upon which he was not allowed to use alternate bathroom facilities, including one in which he soiled himself due to Officer Pitts's alleged refusal to allow him to use the dayroom bathroom.

Defendants argue that the conditions caused by the broken toilet were not extreme enough to result in a constitutional deprivation.   Even for pre-trial detainees, punishment in the constitutional sense requires "genuine privations and hardship over an extended period of time." *Bell*, 441 U.S. at 542.  But conditions of confinement, even if not individually serious enough to amount to a constitutional violation, "'may violate the Constitution in combination when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842-43 (7th Cir. 2013) (quoting *Wilson*, 501 U.S. at 304).  In reviewing Plaintiff's claim, then, the court considers the totality of conditions to which he was exposed.  *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (when assessing the objectively severity of unsanitary conditions, the court must consider their nature and duration, as

well as any resulting harm, physical or psychological); *see also Jaros*, 684 F.3d at 671 (extent, duration, and consequences are relevant to determining whether conditions violate the Constitution).

In support of their motion, Defendants cite district court cases holding that broken plumbing did not amount to a sufficiently serious condition when the detainee was allowed to use alternate facilities. For example, in *Hardiman v. Sheahan*, No. 96 C 3478, 1998 WL 89110, at *2 (N.D. Ill. Feb. 3, 1998) (Williams, J.), the court held that the plaintiff did not state a claim where he alleged that he was confined for 13 days to a cell with a plugged toilet. The *Hardiman* court found it significant that the plaintiff was allowed to use a functioning toilet outside his cell during this time period. *Id.* The court further observed that "[m]ere exposure to offensive cell odors, such as those of a toilet, does not offend the Constitution." *Id.*

Similarly, in *Akindele*, 2017 WL 467683, at *1, the plaintiff, a detainee at Cook County Jail, filed suit after he was housed for nine days in a cell with a non-flushing toilet. When his toilet overflowed, the plaintiff was given supplies to clean up the overflow and covered the toilet with a towel. *Id.* at *2. He remained in the cell with the broken toilet for nine days. *Id.* During this period of time, the plaintiff continued to use the non-functioning toilet in his cell when he did not have access to alternate facilities. *Id.*

In granting summary judgment, the *Akindele* court observed that there was no evidence that the plaintiff was unable to maintain basic hygiene despite the presence of the clogged toilet. *Id.* at *4. The court found the conditions in the plaintiff's cell—a clogged toilet that emitted foul odors, but was covered with a towel—fell short of the harsh conditions deemed unconstitutional in other cases. *Id.* (citing *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 2007) (finding a possible constitutional violation based on allegations that the walls of the prisoner's cell were smeared with human waste, the water was turned off, and plaintiff was refused cleaning supplies)). Although the plaintiff *Akindele* court did not have "unfettered access" to a flushing toilet for the period of time during which his toilet was broken, he did have access to working plumbing in the dayroom for ninety minutes in the morning and evening. *Id.* And although the toilet would not flush, the

8

plaintiff could still use it occasionally without its contents overflowing. *Id.* A guard offered to let him use the bathroom outside his cell upon request, and there was no evidence that the plaintiff soiled himself at any point. *Id.* at **2, 4.

Here, as in *Akindele* and *Hardiman*, Plaintiff continued using his non-functioning toilet, and had at least some access to alternative bathroom facilities, both during his dayroom time and at other times (although the number of such times is disputed). Defendants contend that while the incident in which Plaintiff soiled himself was "unfortunate," one such occurrence does not amount to a violation of his constitutional rights. The court concludes, however, that a jury could find that the conditions to which Plaintiff was subjected were serious enough to amount to a deprivation of his rights. True, the conditions Plaintiff alleges were not as serious as those in the cases he cites, such as *Vinning-El v. Long*, 482 F.3d 923, 923-24 (7th Cir. 2007) (reversing grant of summary judgment where inmate spent six days in a cell with blood and feces on the walls without running water or cleaning supplies). But courts have recognized that "even limited exposure to human waste can constitute an unconstitutional condition of confinement." *Oswald v. Manlove*, No. 16-cv-991-PP, 2019 WL 464135, at *12 (E.D. Wis. Feb. 6, 2019) (Pepper, J.); *see also Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (unpublished) (observing that exposure to human waste not only raises health concerns, but evokes "the more general standards of dignity embodied in the Eighth Amendment.") (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).

Further, although Plaintiff indisputably had *some* access to alternate bathroom facilities, there is a question of fact as to whether that access was adequate. Plaintiff was forced to use the non-functioning toilet until it was full; was exposed to human waste, both his and that of his cellmate; and ultimately urinated on himself when he was refused access to alternate facilities. In circumstances like these, other courts have found a question of fact as to whether the deprivation was constitutionally significant. *See Smith v. Groves*, No. 3:15-cv-1138-NJR-DGW, 2018 WL 1071720, at *3 (S.D. Ill. Feb. 26, 2018) (Rosenstengel, J.) (prisoner confined to his cell for six days with no running water, an unflushable toilet filled with human waste, and no cleaning

supplies brought forth sufficient evidence at summary judgment stage that he was denied adequate sanitation); *Steele v. Knight*, No. 13-cv-00982, 2016 WL 7117155, at *7-8 (S.D. Ind. Dec. 7, 2016) (Magnus-Stinson, J.) (prisoner described sufficiently serious deprivation where he was confined in a cell without a sink or toilet, his requests to use to restroom at night were frequently ignored, and he had to defecate and urinate in containers); *Lindsey v. Esser*, No. 14-CV-357-JDP, 2015 WL 5032659, at *4 (W.D. Wis. Aug. 25, 2015) (Peterson, J.) (a jury could find an inmate endured a sufficiently serious deprivation when he was confined for four days to a cell without running water or a functioning toilet). A jury could find in this case that Plaintiff did not have adequate access to toilet facilities.

## II.     Culpable State of Mind

In addressing the adequacy of Defendants' response to the plumbing problem in Plaintiff's cell, the parties have addressed a Sheriff's Office General Order regarding procedures for reporting "emergency deficiencies" in cells. (*See* Pl.'s Resp., [87] at 103-109; Defs.' Reply at 4-6.) Defendants contend that the non-functioning toilet was not an "emergency deficiency," and that, regardless, an alleged violation of the jail's internal policy is not relevant to the question of whether Defendants responded reasonably to the non-functioning plumbing in Plaintiff's cell. The court agrees that an alleged violation of jail policy is not relevant; Section 1983 provides for challenges to constitutional violations, not violations of internal jail policy. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003); *see also Jackson v. Duran*, No. 15 CV 1846, 2017 WL 8217063, at *5 (N.D. Ill. Dec. 14, 2017) (Norgle, J.) ("even if Plaintiff's confinement in a cell that lacked water violated jail rules, a civil rights action under Section 1983 must be based on a constitutional violation."); *Whitehead v. Dart*, No. 14 C 1656, 2016 WL 7256958, at *7 (N.D. Ill. Dec. 14, 2016) (Castillo, J.) (whether Defendants complied with a municipal policy regarding measurement of cell temperatures was "of little relevance" to the issue of whether inmates were denied adequate heat in violation of the Fourteenth Amendment). Similarly, the issue in this case is whether Defendants knew or should have known of a serious risk to Plaintiff's health and failed to respond reasonably.

In this record, there is no evidence beyond Plaintiff's own testimony about what, if any, action Defendants took in regard to the conditions in Plaintiff's cell. Defendants have not submitted affidavits or other evidence regarding their response to the plumbing breakdown. Instead, Defendants hinge their argument on the fact that Plaintiff does not know what efforts Defendants undertook to repair his toilet, and that a different officer submitted a work order eight days after the water to Plaintiff's cell was shut off. As Defendants see things, "[t]he work order in and of itself shows that the Cook County Sheriff's Office took actions regarding the matter," and belies any inference of deliberate indifference. (Defs.' Reply at 3.) But the questions before this court are whether the Defendants "acted purposefully, knowingly, or perhaps even recklessly" and whether the Defendants' own conduct was objectively unreasonable. *See Miranda*, 900 F.3d at 353-54; *Darnell*, 849 F.3d at 35. The mere fact that a different officer submitted a work order eight days after the problem started does not negate culpability on Defendants' part.

Plaintiff has come forward with evidence from which a jury could find that Defendants failed to respond reasonably to the conditions in his cell. Plaintiff's testimony would support a finding that Sergeant McCoy was aware of the plumbing problem in his cell the entire time, and that her solution (at least as she conveyed it to Plaintiff) was to tell correctional officers to let Plaintiff and his cellmate out to use the restroom. There is no evidence that she submitted a work order for the cell or directed any other officer to do so. Given that the problem persisted for ten days,and given that several officers apparently did not follow through with Sgt. McCoy's directive to let Plaintiff and his cellmate have access to alternate facilities (if they in fact received that directive), a jury could find that she failed to respond reasonably.

With respect to Lt. Rush, there is evidence that he earned of the plumbing problem on or around May 8, apparently through Plaintiff's grievances, but no evidence as to what action he took in regard to the problem. Although a work order was eventually submitted for the toilet, there is no evidence that Lt. Rush was responsible for the submission of that work order. Intentional inaction in the face of an objectively serious condition can result in liability. *Darnell*, 849 F.3d at 36 n. 16; *see Smith*, 2018 WL 1071720, at *3 (officers could be found culpable where they put in

a work order regarding non-functioning plumbing in prisoner's cell, but did not follow up on that order, inquire about a cell change, or provide cleaning supplies).

The case will proceed against Officer Pitts as well. The court acknowledges that the lack of access to toilet facilities for a short period of time may not be sufficiently serious to state a claim of constitutional dimension, particularly if access is denied due to valid penological concerns. *See Phelps v. Godinez*, No. 15-cv-073, 2015 WL 681007, at *4 (S.D. Ill. Feb. 17, 2015) (Yandle, J.) (collecting cases); *Pegues v. Unknown Party C/O*, No. 16-CV-503-SMY, 2016 WL 5912884, at *2–3 (S.D. Ill. Oct. 11, 2016) (Yandle, J.) (prisoner did not state a claim where he was refused access to toilet in cell during a period of time in which inmates were confined to the dayroom and their movement was restricted). In this case, however, Officer Pitts's alleged refusal to allow Plaintiff access to the dayroom bathroom came in the context of a ten-day long breakdown of the plumbing in his cell, and there is no evidence that her refusal was based on security concerns. The only evidence in the record is that Plaintiff asked to use the dayroom bathroom because the toilet in his cell was non-functional, and Officer Pitts shrugged, walked off the tier, and did not return for an hour or two, by which time Plaintiff had soiled himself. "The deprivation of use of a bathroom that creates a risk of particular discomfort and humiliation" may rise to the level of cruel and unusual punishment. *Fulford-El v. Wolfe*, No. CIV WDQ-10-0151, 2010 WL 4721711, at *3 (D. Md. Nov. 15, 2010) (Quarles, J.) (citing *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002)); *see also Mitchell v. Newryder*, 245 F.Supp.2d 200, 204-05 (D. Me. 2003) (inmate stated a claim that he was "purposefully subjected to dehumanizing prison conditions" where officer refused to let offender go to the bathroom and then forced him to sit in his own waste for several hours). Plaintiff may therefore proceed against Officer Pitts.

## III.    Limitation on Damages

Finally, Defendants move for summary judgment based on Plaintiff's testimony that he did not suffer any physical injury due to the non-functioning toilet. (*See* Pl.'s Dep at 47:11-22.) The Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), bars prisoners from bringing suit based solely on emotional or mental injuries. The Seventh Circuit has held that while the statute bars recovery

of compensatory damages for mental and emotional injuries, it "is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself." *Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (quoting *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003)). The same principle applies to claims of unconstitutional conditions of confinement brought by pre-trial detainees under the Fourteenth Amendment. *See, e.g., Stanton v. Dart*, No. 14 C 9974, 2018 WL 1240479, at *6 (N.D. Ill. March 9, 2018) (Lee, J.) (holding that plaintiff who suffered no physical injury due to allegedly insufficient sanitation at Cook County Jail might still be entitled to punitive or nominal damages). Therefore, while Plaintiff's ability to recover damages is limited, summary judgment on this ground is inappropriate.

## CONCLUSION

Defendants' motion for summary judgment [75] is denied. This case is set for status conference on Monday, February 10, 2020, at 9:00 a.m. As the damages Plaintiff suffered in this case appear to be modest, the parties are urged to discuss settlement prior to the status conference, and to notify the courtroom deputy if a referral to the magistrate judge would be of assistance in this effort.

ENTER:

Date:   January 16, 2020

_____
REBECCA R. PALLMEYER
United States District Judge